UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NANCY A. COOK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. 1:05-cv-00781-DFH-VSS |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

The Internal Revenue Service assessed against plaintiff Nancy A. Cook a Trust Fund Recovery Penalty of $89,040.44 under 26 U.S.C. § 6672 for her employer's failure to pay backup withholding taxes on interest paid to a Chinese bank during the year 2000. Under § 6672 a person who is responsible for collecting, truthfully accounting for, and paying over taxes, but who willfully fails to do so is personally liable for the amount of taxes not paid. Cook paid the penalty and now seeks a refund of the $89,040.44 from the United States. The parties have both filed motions for summary judgment. Cook argues that she was not a responsible person under § 6672 because she lacked sufficient financial control over her employer to make decisions about which creditors to pay and therefore cannot be held personally responsible for her employer's failure to pay its taxes. The United States argues that the undisputed facts show that Cook satisfied the definition of responsible person under § 6672 and therefore is not

entitled to a refund. For the reasons explained below, Cook's motion is denied and the United States' motion is granted.

### *Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The motion should be granted so long as no rational fact finder could return a verdict in favor of the non-moving parties. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, a court's ruling on a motion for summary judgment is akin to that of a directed verdict. The question for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. Only genuine disputes over material facts can prevent a grant of summary judgment. *Id.* at 247-48. A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255. However, a party must present more than mere speculation or conjecture to defeat a summary judgment motion. The issue is whether a reasonable jury might rule in favor of the non-moving party based on the evidence in the record. *Anderson*, 477 U.S. at 251-52.

The fact that both sides have filed motions for summary judgment does not alter the applicable standard; the court must consider each motion independently and will deny both motions if there is a genuine issue of material fact. *E.g.*, *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993); *Harms v. Laboratory Corp. of America*, 155 F. Supp. 2d 891, 905-06 (N.D. Ill. 2001). Thus, in considering cross-motions for summary judgment, the court must consider the evidence through two lenses. When considering Cook's motion for summary judgment, the court must give the United States the benefit of all conflicts in the evidence and the benefit of all reasonable inferences that might be drawn from the evidence in its favor, even if the evidence or the inferences seem improbable. When considering the United States' motion for summary judgment, the roles are reversed.

*Facts for Summary Judgment*

KPT, Inc. ("KPT USA") was a ceramic tile manufacturer founded in 1985 in Bloomfield, Indiana.  KPT Industries, Ltd. ("KPT Taiwan"), a publicly traded Taiwanese company, was one of the original shareholders of KPT USA.  KPT Taiwan owned 46 percent of KPT USA's common stock until March 1999, when it acquired the remaining 54 percent.

In March 1997, KPT USA refinanced its operating indebtedness and borrowed $3,000,000 from The Chinese Bank, located in Taiwan.  The loan was secured by a $3,000,000 time deposit provided by KPT Taiwan.  The terms of the loan provided that interest would be due and payable monthly to The Chinese Bank.  The interest paid on the $3,000,000 loan was subject to the 30 percent backup withholding tax imposed by 26 U.S.C. § 881.[1]

Although KPT USA made twelve interest payments to The Chinese Bank in 2000, it made only one of the required withholding tax payments.  In December 2000, The Chinese Bank loan was repaid when KPT Taiwan relinquished the deposit it had given as security.  KPT USA ceased operations in June 2001, filed

---

[1] Section 881(a) of the Internal Revenue Code requires foreign corporations to pay "a tax of 30 percent of the amount received from sources within the United States by a foreign corporation as . . . interest . . . to the extent the amount so received is not effectively connected with the conduct of a trade or business within the United States."

a Chapter 7 bankruptcy petition, and was subsequently liquidated. The unpaid balance of the assessed withholding taxes for the 2000 tax year was $89,040.44.

Plaintiff Nancy A. Cook began working for KPT USA in March 1986 as a plant accountant. Sometime during 1996-98 she was promoted to Accounting Manager. In April 1999, she was promoted to Comptroller. In May 2000, Cook was promoted to her final position with the company, Vice President of Operations, becoming the highest paid employee of KPT USA. Cook Dep. at 50.

When Cook was promoted to Comptroller in 1999 she was given check writing and check signing authority for KPT USA's bank accounts, including a payroll account and a business account used to pay the company's creditors. Cook Dep. at 41-42. Initially, and through May 2000, the accounts required two signatures for check disbursements. In addition to Cook, the only other signatory of the business account regularly present in the United States was Benjamin Tracy. Cook Br. at 3; Hu Aff. ¶7. Hence, the signatures of Tracy and Cook were effectively required in order for KPT USA to pay its creditors. Tracy retired in May 2000, leaving Cook as the sole KPT USA employee in the United States authorized to sign business checks for the company. Cook Dep. at 110-12. KPT USA promoted Cook to Vice President of Operations and changed its two-signature check policy. Effective May 9, 2000, "all deposits, checks, drafts, bills of exchange, and orders for the payment of money shall . . . require only the signature of Nancy Cook Controller of the Corporation." United States Ex. 2.

(Board Resolution).  A superceding signature card reflecting this new policy was filed with the Bloomfield State Bank listing Cook as the sole authorized signatory on the bank accounts, effectively making her signature alone required for any KPT USA check to issue and for any creditor to be paid.  United States Ex. 11.

KPT Taiwan did not participate in the day-to-day management of KPT USA and its involvement was limited primarily to making final payment decisions, making critical plant decisions, negotiating loans, and sending cash support and occasional staff support to KPT USA.  Cook Dep. at 208-10.  Instead, Cook was given substantial authority and responsibility to run the KPT USA operation.  As the Controller and then Vice President of Operations, Cook's duties included signing nearly all of the checks drawn from KPT USA's business checking account (Cook Dep. at 113-15), managing KPT USA's accounts payable (id. at 163-68), acting as the principal contact with KPT USA's suppliers (*id.* at 147), negotiating with KPT USA's vendors over payment terms (*id.* at 149-50), managing the accounting department (*id.* at 102), supervising the manager of the customer service department (*id.* at 101), dealing with the auditors of the company (including signing all of the agreements with the auditors over payment and scope of the audit) (*id.* at 154-56), overseeing the preparation of KPT USA's financial statements (*id.* at 159), and ensuring that accounting controls effectively ensured that the financial statements faithfully represented the financial positions of KPT USA (United States Ex. 6, KPT USA letter to auditors).  Cook also hired and had the authority to fire accounting employees.  Cook Dep. at 100-01.

With respect to tax matters, Cook calculated the backup withholding taxes and prepared and signed the authorization form to make the appropriate deposit, oversaw the preparation of and signed various state withholding tax returns, sales tax returns, employment tax returns, unemployment tax returns, and backup withholding returns of KPT USA, and also signed the Form 1120 tax returns filed by KPT USA in September 2000. Cook Dep. at 47-49; 141-47; United States Exs. 12 and 13.

Cook supervised the entry of invoices into the KPT USA accounts payable computer system and the generation of a report at least weekly of the company's aggregate accounts payable. Cook Dep. at 163-64. Each week Cook herself prepared a derivative report from the aggregate report that prioritized the accounts payable. *Id.* at 164-67. Payables that were high on the priority list included vendors who were threatening litigation and those who were required to keep the company operational, such as payment for raw materials. *Id.* at 176, 228. Sometimes Cook listed the backup withholding tax obligations on the prioritized payables report and sometimes she did not. Cook then communicated the prioritized list of payables she had prepared to KPT Taiwan by fax, email, or through phone conversations. *Id.* at 164-65. After reviewing the list, KPT Taiwan would approve or reject Cook's recommendations, and checks would be cut and signed by Cook based on the final authorization that KPT Taiwan provided. *Id.* Additional facts are noted below as needed, keeping in mind the standard for summary judgment.

*Discussion*

A United States taxpayer who makes interest payments to a foreign corporation is required to deduct and withhold the tax imposed on the foreign corporation by section 881(a) of the Internal Revenue Code. 26 U.S.C. §§ 1441-42. Because federal law requires the taxpayer to hold these funds in "trust for the United States," 26 U.S.C. § 7501(a), these taxes are among those commonly referred to as "trust fund" taxes. *United States v. Energy Resources Co., Inc.*, 495 U.S. 545, 546-47 (1990), citing *Slodov v. United States*, 436 U.S. 238, 242-43 (1978). The 30 percent required withholding is allowed as a credit to the foreign corporation, 26 U.S.C. § 33, in satisfaction of the § 881 taxes.

If a United States taxpayer such as a corporation fails to pay trust fund taxes, the government may collect an equivalent sum directly from the individuals who are responsible for collecting the tax. 26 U.S.C. § 6672; *Energy Resources*, 495 U.S. at 547. More specifically, § 6672(a) provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

Section 6672 and its companion criminal provision, 26 U.S.C. § 7202, were "designed to assure compliance by the employer with its obligation to withhold

and pay the sums withheld, by subjecting the employer's officials responsible for the employer's decisions regarding withholding and payment to civil and criminal penalties for the employer's delinquency." *Slodov*, 436 U.S. at 247.

Civil liability under § 6672 depends on two factors. First, the person must be a "responsible person" in relationship to the delinquent taxpayer. *Bowlen v. United States*, 956 F.2d 723, 727 (7th Cir. 1992). Second, the person must have "willfully failed to carry out the responsibilities that the tax code imposes on him." *Id.*

Cook cites *Adams v. United States*, 504 F.2d 73 (7th Cir. 1974), for the proposition that the court's overriding inquiry in determining whether she was a responsible person under section 6672 should be whether she had the "final word" as to which bills should or should not be paid. The court wrote in *Adams* that the "'person' who is responsible for the payment of corporate taxes within the meaning of § 6672 is that individual who has the final word as to what bills should or should not be paid, and when." *Id.* at 75, citing *Turner v. United States*, 423 F.2d 448, 449 (9th Cir. 1970). Taken in isolation, that sentence looks helpful to Cook, but in the very next sentence, the *Adams* court explained: "In this context, the word 'final' means significant rather than exclusive control over the disbursal of funds." *Id.*, citing *Dudley v. United States*, 428 F.2d 1196, 1201 (9th Cir. 1970). More recently, the Seventh Circuit has even more clearly rejected Cook's theory. The court has explained that "significant control does not mean having exclusive

control over the disbursal of funds or the final say over whether taxes or bills are paid." *Thomas v. United States*, 41 F.3d 1109, 1113 (7th Cir. 1994), citing *Bowlen*, 956 F.2d at 728.  For a person to be considered a "responsible person" under § 6672, all that is required is that the individual "could have impeded the flow of business to the extent necessary to prevent the corporation from squandering the taxes it withheld from its employees." *Thomas*, 41 F.3d at 1113. "In effect, responsibility under section 6672 encompasses all those connected closely enough with the business to prevent the default from occurring." *Bowlen*, 956 F.2d at 728, citing *Adams*, 504 F.2d at 76.  Indicia of "responsible person" status include:  holding corporate office, owning stock in the company, serving on the board of directors, possessing authority to sign checks, control over corporate financial affairs, and the authority to hire and fire personnel.  *United States v. Kim*, 111 F.3d 1351, 1363 (7th Cir. 1997); *Thomas*, 41 F.3d at 1114; *Bowlen*, 956 F.2d at 728; *Domanus v. United States*, 961 F.2d 1323, 1324-25 (7th Cir. 1992); *Garsky v. United States*, 600 F.2d 86, 88 (7th Cir. 1979).

A "responsible person" acts willfully when she "permits funds of the corporation to be paid to other creditors when [s]he is aware that withholding taxes due to the government have not been paid."  *United States v. Running*, 7 F.3d 1293, 1298 (7th Cir. 1993), citing *Bowlen*, 956 F.2d at 729, and *Garsky*, 600 F.2d at 91.  Mere knowledge that other creditors are being paid while the withholding tax has failed to be paid is sufficient to establish willfulness.  *Garsky*, 600 F.2d at 91 (affirming district court's finding of responsible person status and

willfulness, holding that a "responsible person's use of funds, or his knowledge of the use of funds for payments to other creditors after he is aware of the failure to pay the withholding tax, is willful conduct within the scope of Section 6672"). "Liability does not depend upon the presence of bad motive or the specific intent to defraud the Government or deprive it of revenue." *Monday v. United States*, 421 F.2d 1210, 1216 (7th Cir. 1970).

There is no dispute here as to the willfulness prong of the responsible person test; Cook does not argue that she fails to meet the willfulness requirement and the undisputed evidence clearly establishes that she does. Cook was aware that the withholding taxes were not being paid – she was, by her own testimony, directed not to pay them – and that other creditors were being paid with checks she was signing. See Cook Br. at 4; Hu Aff. ¶ 14; Su Supp. Aff. ¶¶ 7, 9.

I.   *Cook's Motion*

To win summary judgment, Cook must show that there are no genuine issues of material fact concerning her status as a responsible person, so that she is entitled to judgment as a matter of law. Even under Cook's view of the law, she cannot meet this burden. The government has raised genuine issues of material fact regarding the degree to which Cook exercised control and authority over the financial operations of KPT USA and disputes Cook's contention that she was not a "true corporate officer" of KPT USA. The government offers evidence that Cook managed the day-to-day operations of KPT USA, signed correspondence as a

Vice-President, negotiated with suppliers and vendors while holding herself out as a Vice-President of the company, signed tax returns using the Vice-President title, signed financial audit information as a corporate Vice-President, and signed UCC statements as Vice-President. See United States Ex. 3 (various letters signed by Cook as Vice President of KPT USA); United States Ex. 4 (promissory note executed by Cook as Vice President of KPT USA); United States Ex. 5 (engagement letter between KPT USA and auditing firm); United States Ex. 6 (management representation letter provided by KPT USA to auditing firm); United States Ex. 7 (security agreement signed by Cook as Vice President of KPT USA); United States Ex. 8 (UCC filing signed by Cook). The government also offers the "Report of Interview with Individual Relative to Trust Fund Recovery Penalty," completed and signed by Cook during an IRS interview, as evidence that she had substantial control over the financial affairs of KPT USA. United States Ex. 14. In that document, Cook herself acknowledged that she could "direct (authorize) the payment of bills" and that she had this authority consistently between April 1999 and June 2001.

When this evidence is viewed in the light reasonably most favorable to the government, a reasonable trier of fact could easily find that Cook actually controlled which bills were paid, with sufficient control to satisfy even her narrow view of status as a responsible person. Cook's motion for summary judgment must be denied.

II.  *The United States' Motion*

Given the Seventh Circuit's decisions quoted above setting forth the standard for responsible person status under § 6672, the United States is entitled to summary judgment. On this record, any reasonable jury would have to find that Cook exercised significant control over KPT USA's finances. Even assuming that she did not have final decision-making authority to decide which creditors would be paid, the undisputed facts show that she was in a position to impede the flow of business to the extent needed to prevent the company from squandering the taxes it was withholding from the interest payments. See *Thomas*, 41 F.3d at 1113.

Tax deficiency assessments made by the Internal Revenue Service are entitled to a "presumption of correctness." *Gold Emporium, Inc. v. Commissioner of Internal Revenue*, 910 F.2d 1374, 1378 (7th Cir. 1990); see *Welch v. Helvering*, 290 U.S. 111, 115 (1933); *Lerch v. Commissioner of Internal Revenue*, 877 F.2d 624, 631 (7th Cir. 1989); *Pfluger v. Commissioner of Internal Revenue*, 840 F.2d 1379, 1382 (7th Cir. 1988). This presumption imposes upon the taxpayer the burden of proving that the assessment is erroneous. *Id.*

Taxpayers have the burden of proof when challenging the Internal Revenue Service's determination of responsible person status and willfulness under section 6672: "'once the government presents an assessment of liability, the taxpayer bears the burdens of production and persuasion' with respect to both the

-13-

responsibility and willfulness issues." *Running,* 7 F.3d at 1297, citing *Ruth v. United States,* 823 F.2d 1091, 1093 (7th Cir. 1987).

Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Hence, the United States is entitled to summary judgment if it establishes that Cook cannot provide sufficient evidence to establish that she was not a responsible person of KPT USA during 2000. Under Seventh Circuit precedent, this essentially means that Cook must be able to establish that she could not have impeded the flow of business to the extent necessary to prevent KPT USA from squandering the money it was obliged to withhold taxes from interest payments to The Chinese Bank.

In one of the law's notable understatements, the Seventh Circuit has observed that section 6672 is "a tough statute." *Thomas,* 41 F.3d at 1115. In *Thomas* the taxpayers served as the corporation's assistant vice presidents and controllers. They supervised the corporation's accounting, finance, and payroll activities, including signing and co-signing checks, preparing monthly financial reports for the board of directors, and preparing payroll returns. The taxpayers in *Thomas* claimed that they were under direct orders from their superiors not to pay the withheld taxes to the government, that their immediate superior made the final decisions regarding which creditors to pay, and that their supervisor would

veto any attempt to pay the taxes that the corporation owed the government. Mr. Thomas quit his job when he realized he could not prevent his employer from defaulting on its tax obligations.

In affirming a jury verdict against these taxpayers, the Seventh Circuit stated that "[Mr. Thomas] departed . . . only after he had seen on a weekly basis for three months that [his employer] would not pay the withholding taxes. He simply waited too long to quit to shield himself from liability as a matter of law." *Id.* at 1116. The court noted: "These facts demonstrate that section 6672 is a tough statute, but they do not absolve either Mr. Thomas or Ms. Thomas of liability." *Id.* at 1115. Even though the taxpayers were not in exclusive control of the corporation, they nevertheless were responsible persons because they could have impeded the business of the corporation by refusing to sign and co-sign checks and by refusing to allow payroll to go forward until the corporation paid the government the taxes it had withheld. *Id.* at 1114.

In this case, the undisputed facts show that Cook was responsible for collecting, accounting for, and paying over the federal income tax withheld on the interest payments to The Chinese Bank. As one of two individuals at KPT USA with check writing authority – an authority that became exclusively hers after May 2000 – Cook had "significant" control over the disbursal of KPT USA funds. Throughout 2000, no creditor of KPT USA could have been paid without Cook's signature.

The undisputed facts — from Cook's own testimony — show that each week Cook prioritized KPT USA's payables and submitted that report to KPT Taiwan for approval. That report sometimes listed the withholding tax as a priority and sometimes did not. She was in a position to use her ability to prioritize creditors and her check signing authority to impede the flow of business to the extent necessary to prevent the non-payment of the taxes. Nothing in KPT USA's business model prevented Cook from paying the withholding tax; she could have simply written out the checks and paid the government. See Cook Dep. at 140-41. Hence, she could have impeded the flow of KPT USA's business to the extent necessary to ensure payment of the withholding taxes. As in *Thomas*, Cook could have refused to sign and co-sign checks payable to other creditors, and she could have refused to allow payroll to go forward until KPT USA paid the government the taxes it owed. Although Cook might have been fired for these actions, *Thomas* establishes that even the potential for loss of employment does not prevent a finding of responsible person status. See *id.* at 1114-16. Cook's own testimony about her duties and responsibilities at KPT USA and her undisputed check-writing authority establish that she could have prevented KPT USA from paying other creditors instead of paying the taxes owed to the government and thus was a responsible person under section 6672. Accordingly, the United States is entitled to summary judgment.[2]

---

[2]The United States' memorandum (Docket No. 26) has several notable errors. Footnote 28 cites *Thomas* as support for four indicia of responsible person status. The court could find only the first two factors in *Thomas*. Although the facts of *Thomas* include taxpayers who had the authority to hire and fire employees, the court never listed the ability to hire and fire employees as an

*Conclusion*

For the reasons stated above, plaintiff Cook's motion for summary judgment (Docket No. 29) is denied and the United States' motion for summary judgment (Docket No. 25) is granted.  Final judgment will be entered accordingly.

So ordered.

Date: December 21, 2006

                                      DAVID F. HAMILTON, JUDGE
                                      United States District Court
                                      Southern District of Indiana

---

indicator, nor did *Thomas* list "the ability to take out loans on behalf of the company" as an indicator of responsible person status.  Footnote 29 is a citation to *Monday*, 421 F.2d at 1015, but *Monday* begins at page 1210, and the quoted language simply does not appear in *Monday*.  The quotation seems to be from *Haffa*, 516 F.2d at 936.  (The government's brief also has substituted a semicolon for a colon in a way that could subtly affect meaning).  Finally, the court could find no support for the point cited in footnote 30, either in the erroneously cited *Monday* or in the court's best guess at what the United States was trying to cite, *Haffa*.

Copies to:

Nathaniel John Dorfman
U.S. DEPARTMENT OF JUSTICE
nathaniel.j.dorfman@usdoj.gov

James K. Gilday
GILDAY DONAHOE & IRVIN PC
jgilday@gdilegal.com

Jeffrey L. Hunter
UNITED STATES ATTORNEY'S OFFICE
jeff.hunter@usdoj.gov